# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES HOUSE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:22-cv-02316-GCS |
| | ) |
| DR. MEYERS, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

In this suit under 42 U.S.C. § 1983, Plaintiff James House ("House"), an inmate of the Illinois Department of Corrections ("IDOC"), claims that he received inadequate post-surgical treatment for his hernia while incarcerated at Menard Correctional Center ("Menard"). Defendant Percy Meyers, M.D. ("Dr. Meyers") insists that the Eighth Amendment claim against him must be dismissed because he was not deliberately indifferent in providing House post-surgical care. The Court agrees and grants summary judgment in favor of Defendant Dr. Meyers.

### PROCEDURAL BACKGROUND

House filed his Complaint on October 6, 2022. (Doc. 1). The Court, upon preliminary view of the Complaint pursuant to 28 U.S.C. § 1915A, allowed House to proceed on the following claim:

> **Claim 2: Eighth Amendment deliberate indifference claim against Defendant Dr. Meyers for denying post-surgical care.**

(Doc. 13, p. 4, 8).

On July 18, 2024, Dr. Meyers filed the instant Motion for Summary Judgment and Memorandum in Support. (Doc. 29, 30). House filed a response in opposition on September 3, 2024, along with his personal affidavit and an Affidavit of Gaye Toms ("Toms Affidavit"). (Doc. 39). On September 11, 2024, Dr. Meyers contemporaneously filed his reply and a separate Motion to Strike the Toms Affidavit. (Doc. 41, 43). House filed a response in opposition to the Motion to Strike on September 23, 2024. (Doc. 44). Accordingly, both motions are now ripe for the Court's review.

## FACTUAL BACKGROUND

The following facts are taken from the record and presented in the light most favorable to House, the non-moving party, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

### A.   House's Medical Records

On September 17, 2021, House consulted with Dr. Tawanna King complaining of a right inguinal hernia. (Doc. 30-3, p. 1-2). He informed Dr. King that his hernia had been present for ten years, was no longer reducible, and continued to cause him pain. *Id.* at p. 2. Upon examination of House, Dr. King noted no apparent distress, labored breathing, or unusual speech. *Id.* Dr. King diagnosed him with a right inguinal hernia that was not reducible; he also prescribed House Tylenol as needed and referred him to general surgery. *Id.*

House's referral for surgical evaluation was authorized on September 24, 2021. (Doc. 30-3, p. 3). On January 7, 2022, House was scheduled to see a general surgeon on

February 16, 2022. *Id.* at p. 4.

On January 8, 2022, House experienced right-side inguinal hernia pain and sought consultation with a nurse. (Doc. 30-3, p. 5). The attending nurse noted a palpated and reducible hernia in House's right groin area, which was the size of a golf ball. *Id.* Accordingly, the nurse referred House for a follow-up with a physician or nurse practitioner. *Id.*

On January 17, 2022, House consulted with a nurse practitioner for ongoing hernia pain. (Doc. 30-3, p. 6). However, his complaints were deemed already addressed in September 2021 by Dr. King, as a referral for surgery had been made and a surgical consultation was scheduled for February 2022. *Id.* House was prescribed Tylenol as needed. *Id.*

On February 16, 2022, House consulted with an outpatient surgeon to discuss his hernia diagnosis. (Doc. 30-3, p. 7). The following week, a nurse practitioner referred House for inguinal hernia surgery. (Doc. 30-3, p. 8). The surgery was authorized on March 7, 2022, and scheduled for April 4, 2022. (*Id.* at p. 9-10).

House underwent laparoscopic hernia repair surgery as scheduled on April 4, 2022, and returned to Menard the same day. (Doc. 30-3, p. 11-12). Defendant Dr. Meyers, upon being informed by staff that no additional room was available for House in the infirmary or the reception and classification areas upon his return, approved House to return to his cell house. *Id.* at p. 12.

The following day, House complained of post-operative pain to a nurse practitioner. (Doc. 30-3, p. 13). The nurse practitioner, observing no signs of infection or

drainage from the surgical site, prescribed Tramadol, Tylenol, Tums, Docusate, and Senekot. *Id.* The nurse practitioner referred House to follow-up with his surgeon in one week. *Id.* The referral was approved the same day. *Id.* at p. 14-15.

On April 15, 2022, House was seen by a nurse during a wellness check. (Doc. 30-3, p. 16). During the check, House reported no complaints and exhibited no swelling, redness, drainage, or signs of infection from his incision sites. *Id.* A week later, on April 22, 2022, House consulted with a healthcare provider and denied experiencing any post-operative complaints. *Id.* at p. 17. He also reported that he was returning to daily activities. *Id.* Then, on April 27, 2022, a nurse prescribed House Ibuprofen after he complained of intermittent stabbing pain. *Id.* at p. 18. The nurse also noted that House was able to move without difficulty. *Id.*

On July 6, 2022, House consulted a nurse for post-operative pain. (Doc. 30-3, p. 19). The nurse prescribed Ibuprofen for three days and instructed House to follow up. *Id.* Additionally, House was to receive a physician consultation if he sought medical attention more than twice in one month for the same issue, experienced acute or severe discomfort, or exhibited abnormal vital signs. *Id.*

On August 12, 2022, House consulted Nurse Practitioner Alisa Dearmond. (Doc. 30-3, p. 20). He reported no complaints or post-surgical complications and was instructed to follow up as needed. *Id.*

**B.     Defendant Dr. Meyers's Declaration**

In an attached declaration to his motion for summary judgment, Defendant Dr. Meyers states the following:

Dr. Meyers has been the medical director of Pinckneyville since June 13, 2018. (Doc. 30-4, p. 1). Prior to his position as medical director, he worked as a physician at Pinckneyville for approximately one year. *Id.* Dr. Meyers's only interaction with House occurred on April 4, 2022, when he approved House's placement in his cell following his hernia surgery. *Id.* at p. 5. This decision was made based on Dr. Meyers's education, training, skills, and experience, and "was, and is, the right way to treat his symptoms and is the best care and treatment for the same." *Id.* at p. 3. House's postoperative diagnosis was an incarcerated direct right inguinal hernia. *Id.* An incarcerated inguinal hernia is a type of hernia in which the small part of the bowel protrudes into the groin area and cannot be pushed back in. *Id.* at p. 5. These types of hernias "are not considered medical emergencies." *Id.*[1]

## MOTION TO STRIKE

As House may only rely on admissible expert testimony to defeat Defendant's summary judgment motion, the Court considers Defendant's Motion to Strike before turning to the merits of the case. *See, e.g.*, *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009) (explaining that the Seventh Circuit "has repeatedly affirmed district courts that have made evidentiary rulings on proposed expert testimony in conjunction with summary judgment orders.").

Federal Rule of Civil Procedure 12(f) provides courts discretion to strike a party's "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

---

[1] Any information omitted from Dr. Meyers's declaration is otherwise recounted under the subsection discussing House's medical records.

Motions to strike are generally disfavored. *See Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). However, they may be granted where they "remove unnecessary clutter" such that they serve to "expedite, not delay" the case. *Id.*

Dr. Meyers moves to strike the Affidavit of Gaye Toms from House's Response to the Motion for Summary Judgment because the Affidavit and House's disclosure of Toms as an expert witness were untimely and because Toms is unqualified to provide opinion testimony on Dr. Meyers's care. (Doc. 43, p. 1).

**A.   Timely Disclosure**

Dr. Meyers contends that House failed to timely disclose Gaye Toms as an expert witness prior to the June 18, 2023, discovery deadline. (Doc. 43, p. 2-3). Dr. Meyers claims that, despite the opportunity to disclose Toms in his Initial Rule 26 Disclosures, in his responses to Defendant's First Set of Interrogatories and Requests for Production, or at his deposition, House failed to disclose Toms as an expert witness prior to September 3, 2024, when he filed her Affidavit. *Id.* at p. 2.

House, for his part, does not disagree that he failed to include Toms in his Initial Rule 26 Disclosures. Instead, House claims that he mentioned Toms "multiple times at his deposition hearing [on] May 20, 2024, and specifically named Gaye Toms as a witness." (Doc. 44, p. 2).

A party must comply with the disclosure requirements in Federal Rule of Civil Procedure 26(a)(2) when introducing an expert witness, that is, "one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." *Meyers v. National R.R. Passenger*

*Corp. (Amtrak)*, 619 F.3d 729, 734 (7th Cir. 2010). The expert disclosure must provide a written report or otherwise state "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." FED. R. CIV. PROC. 26(a)(2). If a party fails to make the required Rule 26(a)(2) disclosure, he will not be "allowed to use that information or witness to supply evidence on a motion, . . . unless the failure was substantially justified or is harmless." FED. R. CIV. PROC. 37(c)(1). *See also Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1988) (explaining that "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless") (citing *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996)).

Rule 26 also requires a party to supplement his initial disclosures if he discovers that "in some material respect the information disclosed is incomplete or incorrect." FED. R. CIV. PROC. 26(e)(1). The Advisory Committee comments, however, note an exception to that rule. There is "no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition . . . ." FED. R. CIV. PROC. 26(e)(1) advisory committee's note to 1993 Amendments (emphasis added).

Here, House alleges he disclosed Toms as an expert witness at his deposition on May 20, 2024. (Doc. 44, p. 2). To support this assertion, House cites to "Pages 22, 40, 44, 53," presumably, of his deposition. *Id.* However, these pages of House's deposition were not provided to the Court. Defendant attached pages 4 and 5 of House's deposition to its

Motion to Strike, in which House denies that he has retained any medical experts for his case. (Doc. 43-4, p. 5). The only other pages the Court has of House's deposition are pages 9 and 12 provided in support of Dr. Meyers's Motion for Summary Judgment. (Doc. 30-1). None of these pages are the ones cited by House, and House has not provided any for the Court to review. However, for purposes of this Order, the Court accepts House's assertion that he disclosed Toms at his deposition. *See Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Therefore, accepting House's version of events, he has satisfied the supplemental disclosure requirement of Rule 26(e)(1). Accordingly, the Court finds that House's failure to disclose Toms prior to his deposition was harmless.

**B.    Admissibility under Rule 702 and *Daubert***

Dr. Meyers argues that Toms's Affidavit should be stricken because she is not qualified to provide opinion testimony on Dr. Meyers's care.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). *See Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009). Rule 702 provides that expert testimony is admissible if technical or specialized knowledge "will assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. District courts act as gatekeepers of expert testimony, ensuring that it is "not only relevant, but reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). When determining the admissibility of expert testimony, district courts consider testing, peer review, error rates, and acceptance

by the relevant expert community. *See Daubert*, 509 U.S. at 593–594. The reliability inquiry is flexible, however, and not all these factors will apply in every case. *See Kumho Tire Co.*, 526 U.S. at 141.

In assessing the admissibility of expert opinions, courts do not focus on "the ultimate correctness of the expert's conclusions," *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013), but "solely on principles and methodology," *Daubert*, 509 U.S. at 595. Stated differently, the "soundness of the factual underpinnings" and "correctness of the expert's conclusions" may affect any ultimate determination on the merits, but do not govern admissibility. *See Smith v. Ford Motor Co.*, 215 F.3d 713, 718–719 (7th Cir. 2000). *See also Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 762 (7th Cir. 2010) (explaining that criticisms of the quality of expert testimony relates to credibility, not admissibility). The expert "may be qualified by knowledge, skill, experience, training, or education." *See Smith*, 215 F.3d at 718 (internal quotation marks omitted). District courts have "great latitude in determining not only *how* to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009) (emphasis in original).

Dr. Meyers argues that Toms is not qualified to provide expert testimony. He notes that she failed to explain her qualifications—i.e., "where or when she went to nursing school, . . . what degree she received[,] . . . [or] what license she maintains or the state of issuance." (Doc. 43, p. 4). In response, House asserts that Toms is qualified to offer opinion testimony as a nurse. (Doc. 44, p. 3).

The fact that a witness is a medical professional does not automatically qualify her

to opine on any and all medical matters. *See, e.g.*, *Laktas v. Wexford Health Sources, Inc.*, Case No. 3:18-CV-01299-NJR, 2021 WL 3621994, at *1 (S.D. Ill. June 8, 2021) (noting that "[a] medical professional such as a doctor or nurse is not *per se* qualified to testify as to all medical questions, but a court should not insist too rigidly that a proposed expert fit into an ever more specialized and confined niche."). The relevant inquiry is "not whether an expert witness is qualified in general, but whether [her] qualifications provide a foundation for [her] to answer a specific question." *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) (internal quotations omitted) (collecting cases). The Court thus considers "each of the conclusions [that an expert] draws individually to see if [the expert] has the adequate education, skill, and training to reach them." *Id. See also Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) (explaining that "[a] supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant under the test set forth by the Supreme Court in *Daubert*.").

As to her qualifications, Toms states that she is a medical professional who has "witnessed numerous of surgeries while working in outpatient care over the years." (Doc. 39, p. 6). She signed her Affidavit with "RPN"— *i.e.*, Registered Pediatric Nurse. *Id. See also* (Doc. 44, p. 3). These assertions fail to demonstrate the education, skill, and training required to opine on whether Dr. Meyers was deliberately indifferent in his post-surgical care of House's hernia. Although Toms claims to have "witness[ed] numerous . . . surgeries," she does not specify how many of those surgeries, if any, involved hernias, or demonstrate experience with post-operative care for hernias. Neither does her title of

Registered Pediatric Nurse qualify her to an opinion on a physician's care following hernia surgery. *See, e.g.*, *Mathison v. Moats*, 812 F.3d 594, 597 (7th Cir. 2016) (holding that a doctor was not qualified to opine on damage to plaintiff's heart because he was not a cardiologist); *Weaver v. Martija*, No. 16 C 9400, 2020 WL 1304873, at *6 (N.D. Ill. March 19, 2020) (finding that a nurse was not qualified to opine on a doctor's treatment for a finger injury where "the vast majority of her experience [was] inapplicable to the injury" and "she [had] no experience with hand surgery or dislocated fingers."). Toms is not entitled, as she does here, to "simply assert a bottom line" regarding Dr. Meyers's treatment without grounding her conclusion in the scientific process. *Metavante*, 619 F.3d at 761. Accordingly, the Court finds that Toms's Affidavit is inadmissible expert medical opinion testimony and **GRANTS** the Defendant's motion to strike.

## MOTION FOR SUMMARY JUDGMENT

### A.     Legal Standards

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 323). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d

1201, 1205 (7th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). *See also Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009) (stating that "we are not required to draw every conceivable inference from the record . . . we draw only reasonable inferences") (internal citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in factfinding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Walker v. Shansky*, 28 F.3d 666, 670–671 (7th Cir. 1994), *aff'd*, 51 F.3d 276 (citing *Celotex*, 477 U.S. at 324). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). In other words, "inferences relying on mere speculation or conjecture will not suffice." *Trade Finance Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) (internal citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]"). Instead, the

non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (internal citation omitted).

**B.     Discussion**

House claims that Dr. Meyers was deliberately indifferent because he sent him back to his cell following his hernia surgery despite his surgeon's instructions and his pain. Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, 414 F.3d 645, 652–653 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) (internal quotation marks omitted). *Accord Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 828 (7th Cir. 2009) (stating that "deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution."). A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm—not to demand specific care. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

To prevail on such a claim, a prisoner who brings an Eighth Amendment challenge of constitutionally deficient medical care must satisfy a two-part test. *See Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The first prong is whether the prisoner has shown he has an objectively serious medical need. *See Arnett*, 658 F.3d at 750; *accord Greeno*, 414 F.3d at 653. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *See Gayton v. McCoy*, 593 F.3d

610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a substantial risk of serious harm.") (internal quotation marks omitted).

The second prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *See Greeno*, 414 F.3d at 653. A plaintiff need not show the individual literally ignored his complaint, just that the individual was aware of the serious medical condition and either knowingly or recklessly disregarded it. *See Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Negligence, gross negligence, or even 'recklessness' as that term is used in tort cases, is not enough." *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987) (citation omitted). Also, "mere disagreement with the course of the inmate's medical treatment does not constitute an Eighth Amendment claim of deliberate indifference." *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (internal quotations and citations omitted).

For the purposes of this motion and based on the record before the Court, the Court finds that the House's hernia constitutes a serious medical need. Therefore, the Court turns to whether Dr. Meyers had subjective knowledge of and recklessly disregarded House's serious medical needs when he returned House to his cell after his hernia surgery.

In Response to Dr. Meyers's summary judgment motion, House alleges the following:

Dr. Meyers's decision to send House to his cell was contrary to his surgeon's instructions. (Doc. 39, p. 1). The surgeon told House that he would be monitored by the

medical staff upon his return to Menard, but Dr. Meyers decided to send him back to his cell because "there was no bed space in the Health care." *Id.* Upon learning that he would be sent back to his cell, House informed staff that his surgeon told him to "not do any stairs" or straining movements until his surgery healed and he was reevaluated by a doctor. *Id.* He asked the staff to call Dr. Meyers back and let him know that "he could not do the stairs or even walk the distan[ce]" to his cell house and that he experienced pain during the van ride back to Menard "every time it hit a bump in the road." *Id.* at p. 2. He also informed the staff that there was no medical staff on duty in his cell house after 3:00 p.m., so that if he had a medical emergency he could not be seen until the shift the following day from 7:00 a.m. to 3:00 p.m. *Id.* Furthermore, it was "common knowledge" that staff would not bring inmates to healthcare after 3:00 p.m. in his cell house because "a lot of inmates faked sickness just to get out . . . of segregation unit." *Id.* Additionally, the wait officer told House that "[h]e found it strange that they would make me walk up stairs after a surgery" and "[h]e would testify that I was in pain the whole ride back from the hospital[,] that the surgeon had said to stay off my feet until I had healed[,]" and "the treatment I received upon my return was not the standard procedure of the medical staff." *Id.*[2] Finally, Dr. Meyers could have moved House from his cell to the infirmary

---

[2] In his Response, under the heading "Additional Facts," House also indicates that Dr. Meyers failed to provide him with requested documents during discovery relating to the discharge of other inmates from the infirmary. (Doc. 39, p. 3). He claims that, had Dr. Meyers provided those documents, he would have had evidence that "the following day 3 inmates were dis-charged from the infirmary by Dr. Meyers" and that those inmates could have been discharged to make room for him in the infirmary. *Id.* Dr. Meyers denies that House requested those documents in discovery and attached to his Reply a copy of House's First Set of Interrogatories and First Set of Requests for Production to Defendant. (Doc. 41-1). The Court agrees with Dr. Meyers. House's discovery requests do not appear to contain a request for

because "3 inmates were discharged" by him that day. *Id.* at p. 3.

As an initial matter, Dr. Meyers's objects to House's Response on the grounds that he failed to cite to evidence in the record in support of the allegations. (Doc. 41, p. 2-3). This Court's Local Rule 56.1(b) requires that any "disputed facts . . . contain specific citation(s) to the record, including page number(s), upon which the opposing party relies, where available." SDIL-LR 56.1(b). It also provides that "the Court will disregard any asserted fact that is not supported with a citation to the record, unless the factual basis for the assertion is clearly identifiable from the parties' related citations or permissible inference." SDIL-LR 56.1(f).

The fact that a plaintiff is *pro se*, as is the case here, does not excuse non-compliance with procedural rules. *See, e.g., Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) (explaining that "even *pro se* litigants must follow procedural rules"). Nevertheless, the Seventh Circuit has "long recognized that pro se litigants must be afforded 'leniency . . . on procedural matters." *See Otis v. Demarasse*, 886 F.3d 639, 644-645 (7th Cir. 2018) (citing *Lovelace v. Dall*, 820 F.2d 223, 228 (7th Cir. 1987)). Likewise, the Court will excuse House for not including citations to the record in his Response. The factual basis for the assertions in House's Response is "clearly identifiable from . . . permissible inference" based on the statements in House's Affidavit that is attached to his Response. SDIL-LR 56.1(f). Therefore, his failure to cite to the record was harmless.

---

documents pertaining to the discharge of other inmates from the infirmary. Even accepting House's version of events, for reasons discussed below, the fact Dr. Meyers otherwise decided to send House to his cell does not amount to deliberate indifference.

Next, Dr. Meyers disputes House's allegations for lack of evidence regarding the surgeon's instructions or that House informed staff of said instructions. (Doc. 41, p. 2). House's allegations regarding those statements are matters of credibility which may not be resolved on summary judgment. *See National Athletic Sportswear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Nevertheless, even when accepting House's version of events, the disputed statements are not material to the only issue before the Court, *i.e.*, Dr. Meyers's alleged deliberate indifference.

First, House has not pointed to any evidence indicating that Dr. Meyers knew the surgeon told House to "not do any stairs" following his surgery or that House was in pain. (Doc. 39, p. 1). Instead, House claims that, upon his return to Menard, the "medical staff" were told by Dr. Meyers to "follow the protocol" and the "direction given" by the surgeon. *Id.* These vague allegations are insufficient to demonstrate that Dr. Meyers knew that the surgeon told House he was not supposed to use the stairs. House claims that Dr. Meyers decided to send him to his cell "over the phone with-out having even looked at . . . the [surgeon's] order." *Id.* at p. 5. House states he informed staff about the surgeon's instructions regarding stairs and his pain only *after* learning of Dr. Meyers's decision. *Id.* at p. 2. He allegedly asked the staff to call Dr. Meyers back and inform him that "he could not do the stairs or even walk the distan[ce]" to his cell house and that he experienced pain during the van ride back to Menard "every time it hit a bump in the road." *Id.* He also claims that he "collapse[d] at least twice on the walk" back to his cellhouse. *Id.* at p. 4. However, there is no evidence that staff called Dr. Meyers back or informed him of House's complaints or collapses. Although House complained of post-surgical pain to a

nurse, his complaints were not made until the day after his surgery. (Doc. 30-3, p. 13). There is no evidence that Dr. Meyers was involved in that visit or otherwise had knowledge of House's pain when he chose to send him back to his cell. Accordingly, House has failed to show a required element of deliberate indifference: that Dr. Meyers had "actual, personal knowledge of a serious risk, coupled with the lack of any reasonable response to it." *Ayoubi v. Dart*, No. 17-1561, 724 Fed. Appx. 470, 474 (7th Cir. Feb. 2, 2018). *See also Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (stating that the defendant "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye[.]") (quoting *Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir. 1988)). To be clear, the Court does not question House's assertions that he was in pain. However, to survive summary judgment, House must show some evidence that Dr. Meyers had personal knowledge of his pain and/or the surgeon's instructions and that he recklessly disregarded them. House has failed to do so.

Based on what Dr. Meyers knew about House's condition, the Court concludes no reasonable jury could find he was deliberately indifferent in sending House back to his cell. Unless no minimally competent professional would have chosen the same course of treatment under the circumstances, courts defer to the treatment decisions of medical professionals. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Sain v. Wood,* 512 F.3d 886, 894–895 (7th Cir. 2008)). Here, it is undisputed that House's postoperative diagnosis was an incarcerated direct right inguinal hernia. (Doc. 30-4, p. 3; Doc. 39, p. 1). House claims that Dr. Meyers "did not follow the normal Medical Procedures to a patient's medical needs." (Doc. 39, p. 5). However, he does not explain what constitutes

"normal Medical Procedures."³ On the other hand, Dr. Meyers states that, in his professional judgment, incarcerated direct right inguinal hernias "are not considered medical emergencies" and that his treatment decision for House "was, and is, the right way to treat his symptoms and is the best care and treatment for the same." (Doc. 30-4, p. 3, 5). House's disagreement with Dr. Meyers's decision, or that the unit officers also indicated their surprise with that decision, without more, is not enough to establish an Eighth Amendment violation. *See Pyles*, 771 F.3d at 409 (stating that "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation.") (citing *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006)). This is because "the Constitution is not a medical code that mandates specific medical treatment." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996), *cert. denied*, 519 U.S. 1126. Even if Dr. Meyers's decision to return House to his cell was a mistake, negligence, or malpractice, it would also not be enough to constitute deliberate indifference. *See, e.g.*,

---

³ House appears to elaborate on the definition of "normal Medical Procedures" by attaching the Affidavit of Gaye Toms to his Response. (Doc. 39, p. 6). That Affidavit was stricken for reasons stated earlier in this Order. However, even if it had not been stricken, the Affidavit would not have helped House's argument. The Affidavit provides that "[p]atients that undergo anesthesia for any surgeries are to be kept over night or for 24 hours observation" and that "[a] physician should have followed post surgical care after 24 hours to make sure that James weren't having any problems or complications after surgery. Such as blood clots, hemorrhaging, and making sure that an infection did not occur." *Id.* First, no reasonable jury would accept Toms's statement that all procedures requiring anesthesia requires "over night or 24 hours observation." There are myriad procedures in which patients undergo anesthesia and are discharged the same day without overnight observation. Second, House received post-surgical care the day after his discharge when he met with a nurse practitioner. (Doc. 30-3, p. 13). The nurse practitioner observed no signs of infection or drainage from the surgical site, prescribed Tramadol, Tylenol, Tums, Docusate, and Senekot, and directed House to have another follow-up with his surgeon in one week. *Id.*

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (stating that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (stating that "[it's clear that evidence of medical negligence is not enough to prove deliberate indifference.") (collecting cases). Based on the evidence, the Court cannot conclude that any reasonable jury could find Dr. Meyers's treatment was "so blatantly inappropriate as to be divorced from any medical judgement in order to constitute deliberate indifference." *See Anderson v. Randle*, No. 11-1890, 451 Fed. Appx. 570, 572 (7th Cir. Nov. 23, 2011). Accordingly, Dr. Meyers is entitled to summary judgment in his favor.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant Dr. Meyers's Motion for Summary Judgment (Doc. 29) and Motion to Strike (Doc. 43). The Clerk of Court is **DIRECTED** to close the case and enter judgment accordingly.

    **IT IS SO ORDERED.**

    **DATED: September 22, 2025.**

Digitally signed by Judge Sison
Date: 2025.09.22 13:23:10 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**